UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                                                          **Hon. Hugh B. Scott**

                              v.
                                                          09CR300S

MAURICE C. HOUGH and                                      **Order**
JAMES C. BLUE,

                    Defendants.


        This matter is referred to the undersigned to hear and determine pretrial matters pursuant

to 28 U.S.C. § 636 (b)(1)(A) and, pursuant to 28 U.S.C. § 636(b)(1)(B), to submit proposed

findings of fact and recommendations for the disposition of any motion excepted by 28 U.S.C.

§ 636(b)(1)(A).

        The instant matters before the Court are (a) defendant James Blue's omnibus motion

(Docket No. 12) which seeks the following relief: severance, discovery and inspection, filing of

a Bill of Particulars, production of impeachment information, production of Brady materials,

Jencks Act material, expert disclosure, and identity of informants; (b) defendant Maurice

Hough's motion (Docket No. 15), seeking discovery, severance, disclosure of confidential

informants, production of Federal Rule of Evidence 404(b), 608 and 609 materials, production of

Jencks Act materials, and preservation of rough notes; and (c) the Government's reciprocal

discovery motion from Hough (Docket No. 16, Gov't Response to Hough at 8-9). Blue also joins

in his codefendant's motion (Docket No. 12, Blue Motion ¶ 27). The Government responded

(Docket No. 17, to Blue's motion; Docket No. 16, to Hough's motion) and the motions were

argued[1] and submitted on January 19, 2010 (text entry, Jan. 19, 2010). At oral argument, Hough reiterated his request for production of the 911 tapes arising from this case (see Docket No. 15, Hough Motion ¶ 3(a)).

## BACKGROUND

Defendants were indicted for possession of a firearm (to wit a short barreled shot gun), on February 22, 2009, in violation of 26 U.S.C. §§ 5822, 5845(a), (i), 5861(c), and 5871, and 18 U.S.C. § 2 (Docket No. 1, Indict., Count 1). Count 2 alleges that defendants possessed an unregistered short barreled shot gun between February 22 and 24, 2009, in violation of 26 U.S.C. §§ 5841, 5845(a), (d), and 5871, and 18 U.S.C. § 2 (id., Count 2). Count 3 alleges that on February 22, 2009, defendants possessed a short barreled shot gun, in violation of 26 U.S.C. §§ 5822, 5845(a), (i), 5861(f), and 5871, and 18 U.S.C. § 2 (id., Count 3). The last substantive count alleges that Hough, having been convicted of a felony in 2002, unlawfully possessed ammunition (five Winchester shotgun shells), in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) (id., Count 4). The last count is a forfeiture count to seize the firearms and ammunition (id., Count 5).

According to the Government (see Docket No. 16, Gov't Response to Hough at 1-3; Docket No. 17, Gov't Response to Blue at 1-3), on February 23, 2009, Jeffrey Kulig reported to the Jamestown Police Department that he lent his car to his friend Maurice Hough but it was not returned, reporting the car stolen. On the next day, Kulig called the police and reported that his car was found and he saw a shotgun in the car. The Jamestown police came to the vehicle's location but could not see a shotgun or other firearm inside of it. Hough approached these

_____

[1]Counsel for Blue and defendant Blue were not present for this argument.

officers and asked what they were doing (Docket No. 16, Gov't Response to Hough at 2). The officers replied that the vehicle was reported stolen after it was not returned. When asked if there were any firearms in the car, Hough said no and told the officers that they could search it (id. at 2-3). After receiving the keys and opening the trunk, officers discovered a sawed off shotgun, the subject of this case (id. at 3).

Hough then claimed that the shotgun belonged to Blue (id.); Hough called Blue who then arrived at the scene (id.). Both defendants then were arrested. Subsequent investigation revealed that the shotgun was stolen from Jeffrey Thomas days before this search (id.).

## DISCUSSION

I.      Severance

Both defendants seek severance. As noted by the Government in its written response (Docket No. 17, Gov't Response to Blue at 4-5) and by Hough during oral argument, this relief is better addressed by the trial judge with plenary jurisdiction. This motion **is deferred** for consideration by Chief Judge Skretny.

II.      Discovery

Defendants next seek various items of pretrial discovery. Although there is no general constitutional right to pretrial discovery in a federal criminal case, a defendant does have a pretrial discovery right with respect to certain matters. For example, under the Fifth Amendment's due process clause, a defendant is entitled to specific exculpatory evidence which is material either to guilt or punishment. In addition, the Government has certain disclosure obligations under Rule 16 of the Federal Rules of Criminal Procedure and the Jencks Act, 18 U.S.C. § 3500.

The only controverted discovery issue is the production of 911 tapes.

*911 Tapes*

Hough seeks the 911 recordings or transcripts for February 24 and 25, 2009, at various specified times, as well as any calls made by Jeffrey Thomas reporting a stolen shotgun (Docket No. 15, Hough Motion ¶ 3(a)). He argues that these recordings are material to his defense and are discoverable under Rule 16 or as <u>Brady</u> material. These calls are by witnesses that either pertaining to the car or the shotgun was stolen. At oral argument, the Government states that the Government may not call these "witnesses," but if the Government changes its intentions these materials will be disclosed with its Jencks Act production. The Government concludes that Hough seeks these 911 recordings as a fishing expedition. The Court then raised the concern whether these recordings (made by the Jamestown Police Department or the Chautauqua County Sheriff's Department) were preserved. The Government in its response stated that it did not possess such evidence (Docket No. 16, Gov't Response to Hough at 4).

If the Government has these tapes in its possession, they should be produced. Nevertheless, Hough could seek a Rule 17(c) subpoena upon the Jamestown Police Department or whatever agency that would have custody of the 911 recordings to produce them, <u>see</u> <u>United States v. Savoca</u>, No. 03CR.841, 2004 U.S. Dist. LEXIS 9581, at *1 (S.D.N.Y. Mar. 29, 2004).

III.    Bill of Particulars

Next, Blue moves for service of a Bill of Particulars describing his role in the offenses charged (Docket No. 12, Blue Motion ¶¶ 23-26). The Government declines to produce a Bill (Docket No. 17, Gov't Response to Blue at 5).

Rule 7(f) of the Federal Rules of Criminal Procedure provides that the Court may direct the filing of a Bill of Particulars. Bills of Particulars are to be used only to protect a defendant from double jeopardy and to enable adequate preparation of a defense and to avoid surprise at trial. United States v. Torres, 901 F.2d 205 (2d Cir. 1990). The Government is not obligated to "preview its case or expose its legal theory" United States v. LaMorte, 744 F. Supp. 573 (S.D.N.Y. 1990); United States v. Leonelli, 428 F. Supp. 880 (S.D.N.Y. 1977); nor must it disclose the precise "manner in which the crime charged is alleged to have been committed," United States v. Andrews, 381 F.2d 377 (2d Cir. 1967).

Upon review of the Indictment, the Court finds that defendant Blue is **not entitled** to a Bill of Particulars inasmuch as the defendant is sufficiently advised of the charges against him to allow for the proper preparation of a defense, to avoid surprise at trial, and to protect the defendant from double jeopardy.

IV.     Brady Material

The defendants have requested that the Government disclose all materials potentially favorable to the defendant, including information to be used for the impeachment of the Government's witnesses, as required under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny (Docket No. 12, Blue Motion ¶ 29; Docket No. 15, Hough Motion ¶¶ 20-29). Brady material, as those cases have come to define it, includes all evidence which may be favorable to the defendant and material to the issue of guilt or punishment. Such evidence includes "[a]ny and all records and/or information which might be helpful or useful to the defense in impeaching . . . [and] [a]ny and all records and information revealing prior misconduct . . . attributed to the [Government's] witness." United States v. Kiszewski, 877 F.2d 210 (2d Cir. 1989).

The defendants' motions identify numerous specific categories of documents encompassing both exculpatory and impeachment <u>Brady</u> materials which they seek to obtain. The Government's written response acknowledges its disclosure obligations, but the Government claims that it presently does not possess nor is it aware of the existence of <u>Brady</u> material, but any <u>Giglio</u>[2] material has been provided or will be no later than two weeks before trial or as ordered by the trial court (Docket No. 17, Gov't Response to Blue at 7; Docket No. 16, Gov't Response to Hough at 5-6).

The instant case does not appear to be unusually complex. Balancing all of the above, the Court concludes that disclosure of such impeachment material, if any exists, in accordance with the common practice in this district (prior to trial so long as it is disclosed in sufficient time for the defendant to have a fair opportunity to utilize the information at trial) is sufficient in this case.

V.      Rule 404(b), 608, and 609 Evidence

Hough next requests disclosure of all evidence of prior bad acts the Government intends to use in its case-in-chief, pursuant to Federal Rule of Evidence 404(b) (Docket No. 15, Hough Motion ¶¶ 30-33). The defendant also requests disclosure of all evidence of prior bad acts that the Government intends to use for impeachment of the defendant should he testify at trial, pursuant to Rules 608(b) and 609(a) (<u>id.</u> ¶¶ 34-36, 37).

Rule 404 requires that the defendant be given "reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to use at trial." The Government states that it notified Hough of its

---

[2]<u>Giglio v. United States</u>, 405 U.S. 150 (1972).

intention not to use his prior criminal convictions to show intent, knowledge, and absence of mistake or accident, but does intend to use this information as proof of element of the offense under 18 U.S.C. § 922(g) (Docket No. 16, Gov't Response to Hough at 6).  This is sufficient in this case.

VI.     Identity of Informants

Blue and Hough each seek the pre-trial disclosure of the identity of any informants in this case (Docket No. 12, Blue Motion ¶¶ 33-35; Docket No. 15, Hough Motion ¶?0 14-19).  The Government contends that there is no confidential informant involved here (Docket No. 17, Gov't Response to Blue at 8; see Docket No. 16, Gov't Response to Hough at 5).  The Government is not required to furnish the identities of informants unless it is essential to the defense.  Roviaro v. United States, 353 U.S. 52, 60-61 (1957); United States v. Saa, 859 F.2d 1067, 1073 (2d Cir.) cert. denied 489 U.S. 1089 (1988).  Thus, if informants were involved here, the Government is not obliged to identify them.  Since no informants were involved, defendant's request is **denied as moot**.

VII.    Preservation of Evidence

Hough also has requested preservation of rough notes and other evidence taken by law enforcement agents involved (Docket No. 15, Hough Motion ¶¶ 46-49).  The Government has agreed to preserve all items of evidence (Docket No. 16, Gov't Response to Hough at 7).  This **should be sufficient**.

VIII.   Disclosure of Jencks Act Materials

The defendants next seek disclosure of material subject to the Jencks Act, 18 U.S.C. § 3500 (Docket No. 12, Blue Motion ¶ 32; Docket No. 15, Hough Motion ¶¶ 38-45).  The Jencks

Act governs the disclosure of information and statements relating to the Government's witnesses. Generally, according to the Jencks Act, the Government need not disclose such information regarding its witnesses until <u>after</u> the witness has testified at trial. In this case, the Government has agreed to disclose this information either two weeks before trial or as ordered by the trial Court (Docket No. 16, Gov't Response to Hough at 6-7; <u>see</u> Docket No. 17, Gov't Response to Blue at 8). The defendants have not established that prior disclosure of Jencks material is essential to the preparation of a defense in this case.

IX.     Disclosure of Expert Materials

Pursuant to Rule 16(a)(1)(E), Blue seeks a written summary of any expert testimony that the Government intends to use in its direct case, along with the expert's qualifications, and the basis for the expert's opinion, whether or not the expert files a report (Docket No. 12, Blue Motion ¶¶ 30-31). The Government reports that it has provided Blue with all materials requested (Docket No. 17, Gov't Response to Blue at 7). This should be sufficient.

X.      Government's Reciprocal Discovery

The Government has sought reciprocal discovery from Hough (Docket No. 16, Gov't Response to Hough at 8-9), without objection by Hough. Under Rule 16, the Government is entitled to production of documents in defendant's possession that he intends to use in his case-in-chief. Therefore, the Government's motion is **granted**.

**CONCLUSION**

For the reasons stated above, defendant James Blue's omnibus motion (Docket No. 12) is **granted in part, denied in part**, and defendant Maurice Hough's omnibus motion (Docket No. 15) is **granted in part, denied in part**, as described in detail above. The Government's

reciprocal motion for discovery from defendant Hough (Docket No. 16, Gov't Response to Hough at 8-9) is **granted**.

So Ordered.

/s/ Hugh B. Scott
Hon. Hugh B. Scott
United States Magistrate Judge

Dated:  Buffalo, New York
February 19, 2010